**JOHN MOODY, Administrator of Sarah Moody, late Sarah Kirkpatrick, v. WILLIAM WHANN and PETER WILLIAMS, Administrators d.b.n. of Isaac Alexander.**

Court of Common Pleas. New Castle. December 14, 1796.

*Rodney's Notes.*\*

---

\* This case is also reported in *Bayard's Notebook, 173.*

*Bayard, Levy, Vandyke* [for plaintiffs]. *Miller, George Read* [for defendants].

January 19, 1779. Guardian bond. Isaac Alexander and Henry Clark to Sarah Kirkpatrick.

October 14, 1768. Samuel Kirkpatrick's will, devise of all his real and residue of personal to be educated, etc., to Sarah, the use of it to go to his wife until Sarah shall come of age.

April 18, 1775. Account settled by executor in Orphans' Court. Balance, £169. 3. 9½ in her hands. Demand of John Moody against Alexander's estate stated by counsel to be:

> 386. 9. 6........for rent interest etc., until 1785.
> 169. 3. 9½......balance of personal estate.

Principal, £555.13. 3½————798. 5. 9=amount of principal and interest until 1794.

---

### Plaintiff['s Witnesses].

First, John Hall. Kirkpatrick's dwelling plantation was in Welch tract, I believe, am not certain, I had a claim. Obtained forty acres of the home place, and was paid £120 for it by the widow, referred to George Read and T. K., Esquire.

Second, Hance Harman. One tract was in Pencader Hundred, another, his dwelling place, was in St. George's or Red Lion. He had no other that I knew. Alexander Law was in possession of the Pencader place. He paid about eighteen or twenty pounds rent, had it from 1782 until [——].[1] The widow lived on the other place. Sarah lived with her, until the widow died in or about

---

[1] Blank in manuscript.

1786.  The place contained 120, 140, or 200 acres, improvements were indifferent, soil light, four fields about thirty acres each cleared and two small fields ten acres each and twenty or thirty acres woodland.  This was more valuable than the Pencader farm.  I gave £40 per year to Mr. Moody who married Sarah and took possession about 1786 or 1787.

Third, Daniel Blaney.  I have seen the dwelling place in Red Lion, and the other in Pencader.  A. Law lived on it twenty or thirty years ago.  It would have rented at that time for £16 or £18.  The other farm was more valuable, would have rented for £30 or £35.

Page 601.  Book X.  August 21, 1766.  Deed from Thomas Duff, Sheriff, to Samuel Kirkpatrick for two hundred acres land in Pencader Hundred.  Consideration £142. 10. 0.

2 Body Laws 112, passed in 1766, the guardian is liable to a forfeiture of £50 if he does not have a valuation.

----

### Defendants' Witnesses.

First, George Adams sworn.  Samuel Kirkpatrick left one plantation in Red Lion worth £45 or £48, and one in Pencader worth £18 or £20.  Alexander Law lived on it 20 or 25 years.  I heard him say he paid the rent to Mrs. Kirkpatrick in 1777, she said she took last years rent etc. to buy salt.  She died in the Spring 1785, Sarah was then near about eighteen years.

Second, Samuel Eccles.  Sarah was brought up like other young women.  Could read, write, etc., appeared decent.  The widow was scarce of money, could not easily have paid £169 in 1779.  She was economical, did not live beyond her income.

Third, Elizabeth McGinnis.  Sarah lived about six months with me.  That was fifteen years ago.  Was weakly, and was tenderly brought up.  Went to school until she was fifteen.  Two years rent when sealed came to £10 a year.  The widow has been dead eleven years.  Issac Alexander never received the rents during her life, he died within two years after.  Sarah was seventeen or eighteen at her mother's death.  Her mother repaired the house, etc., and one year she was at £17 expense on the other place about six years after his death, and made an allowance to Laws for repairs on fence and barn.

John Hanna.  I knew the widow Kirkpatrick and her daughter Sarah three or four years before the year 1783.  Sarah after that got a good deal.  Once went to Philadelphia when she was about

'eighteen with me, bought twenty dollars. Sarah's bill on an average amounted to about twenty or twenty-four dollars anyway.

George Clark, son of John Clark, executor.

£109. 16. 7. Inventory of Elizabeth Kirkpatrick's estate appraised in 1785, account of executor.

———

*J. Miller* for defendants. A guardianship existed previous to 1779 paramount to any appointment that could be made by the Orphans' Court. The expression in the will amounts by construction in law to the appointment of a testamentary guardian. 1 Ves.Sr. 90, 91, a declaration "that his wife should have the education and maintenance of his children," Lord Chancellor thinks would amount to the devise of a testamentary guardian. Mos. 108, 109, I desire my son etc. may be under the care and direction of T. H. and M. H., amounts to the appointment of a testamentary guardian. 2 Del.Laws 112, passed in 1766. 3 Del.Laws 319, passed February 12, 1781. 2 P.Wms. 115, guardian appointed by will takes place of all others. Swin.Wills 216, if testator say, I leave my children to care of my wife, he is to be confirmed. 1 Esp.N.P. 4, administration granted. He appointed a person to receive money etc.; after a will appearing, letters were called in and repealed.

*Vandyke* for plaintiffs. 1 Del.Laws 58, empowering Orphans' Court to admit minors to choose guardian and to appoint. Orphans' Court have power to remove testamentary guardian for want of capacity etc. and appoint another. 2 Eq.Cas.Abr. 485, 487. *A* made a will appointing his wife *L.* guardian; she was young and married in six months; the court decreed she should be removed. Co.Litt. 89 A, if guardian be robbed (not by his negligence etc.) he shall be discharged. 2 Bac.Abr. 685, if a guardian does not prohibit waste etc., he shall be responsible. 2 Eq.Cas.Abr. 489, the ward cannot call on the receiver or servant but has his remedy against the guardian. Defendants contend for the conclusion in this case. Plaintiffs object to their conclusion. The court consider that the plaintiffs should have the conclusion, under the notice given under the leave. 2 Body Laws 111–113, 299, an appeal to Supreme Court where any person may conceive themselves aggrieved.

*G. Read* for defendant. This, gentlemen, is an intricate case. You will therefore bear with me. First question we shall consider [is] whether I. Alexander could have been appointed guardian in 1779. I say he could not. The action of the Orphans' Court was an arbitrary, unlawful and illegal act, and the conduct

of the counsel for plaintiff is like the court's. 1 Del.Laws 60 provided etc., "The Orphans' Court shall have due regard to all wills and testaments," etc. It does not appear E. Kirkpatrick ever was removed. For my part I never did see a clearer case come before a court and jury.

*Bayard* for plaintiff. It does not appear that E. Kirkpatrick ever appealed or objected to the appointment of I. Alexander. Vaugh. 181. Litt.Ten., s. 379, all offices of trust as steward, constable, must be personally occupied, unless granted to be occupied by a deputy.

The Court directed the jury that if they should find the fact to be that the widow, who was the testamentary guardian under the will, did relinquish, or consent to the appointment of Isaac Alexander, eleven years after the testator's death, in that case there will be no obstacle in the way of your finding for the plaintiff the sum which the evidence may convince you is due. It is a matter of doubt how far the bond may be binding after the minor came to the age of fourteen. The practice of the Orphans' Court formerly was to remove guardians either from incapacity or on application of the parties. Whether this was really the fact is for you to decide.